**United States District Court**
**District of Maine**

U.S. DISTRICT COURT
DISTRICT OF MAINE
BANGOR
RECEIVED & FILED

2020 DEC 14 P 2 39

DEPUTY CLERK

ABDUL QUDUS,

Plaintiff,

v.

WASHINGTON COUNTY
COMMUNITY COLLEGE,

Defendant.

Docket No.: 1:20-cv-00465-DBH

**Complaint and Demand for Jury Trial**
**and Injunctive Relief Sought**

Abdul Qudus hereby complains against Washington County

Community College (WCCC), as follows:

**Summary of the Action**

1.     Mr. Qudus, who is 74 ½ now, and is from Pakistan, has more

than 26 years of experience as a science instructor at a public community

college, and he has two master's degrees in a science field.

2.     Despite these qualifications, WCCC, a public community college,

chose to not even interview Mr. Qudus for an open full-time Science

Instructor position and instead hired a candidate who was much younger

than Mr. Qudus, white, and from the United States.

3.      Although Mr. Qudus's application was reviewed by a hiring committee, Mr. Qudus's failure to even qualify for an interview came down to one hiring committee member's choice to give him extremely low scores on two criteria: engaging stakeholders and experience working in or teaching in a lab.  This reviewer scored Mr. Qudus the lowest on those metrics despite his application materials containing much the same evidence of his qualifications in those areas as other applicants' materials.  For example, Mr. Qudus did not specifically state in his application materials that the college-level science courses he taught included labs (which they did), but neither did the candidate ultimately selected for the position. The reviewer gave Mr. Qudus a "2" on that criteria while she gave the other candidate a "4."

4.      None of the hiring committee members took issue with Mr. Qudus's teaching experience, and he receive uniformly high scores on that criteria.  But, after the fact, WCCC defended its decision not to hire Mr. Qudus by pointing to Mr. Qudus's lack of experience teaching particular courses that were not listed in the job description for the position.  WCCC also defended its decision not to hire Mr. Qudus because the white teacher hired instead of him had "a personal experience that is very similar to the type of students served by WCCC."

## Parties

5.     Plaintiff Abdul Qudus is a citizen of the United States and is a resident of Robbinston, Washington County, Maine.  Mr. Qudus was born in India (a British Colony at the time of his birth) and raised in Pakistan and is of Indian/Pakistani descent.

6.     Defendant Washington County Community College is a public community college located in Calais, Washington County, Maine. It is part of the Maine Community College System.

## Jury Trial Demand

7.     Under Fed. R. Civ. P. 38(b), Plaintiff hereby demands trial by jury on all issues triable to a jury.

## Jurisdiction and Venue

8.     This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. This Court has proper subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

9.     Venue is proper in the District of Maine under 28 U.S.C. § 1391(e) (3) because Plaintiff resides in Maine. Under Rule 3(b) of the Rules of

this Court, this action is properly filed in Bangor because a substantial part of the events giving rise to the claim occurred in Washington County.

## Exhaustion of Administrative Procedures

10.     Plaintiff filed a charge of discrimination with the Maine Human Rights Commission (MHRC) and the Equal Employment Opportunity Commission (EEOC) on June 26, 2019 alleging discrimination on account of his age, national origin, race, ancestry, and religion.

11.     Plaintiff received a statement of finding and dismissal from the MHRC dated September 17, 2020, and a dismissal and notice of rights letter from the EEOC dated September 20, 2020.

12.     Under 5 M.R.S. §4622, Plaintiff has satisfied one or more of the prerequisites to be awarded attorney fees and all available damages under the Maine Human Rights Act.

13.     Plaintiff has exhausted all administrative remedies for all claims in this action that require administrative exhaustion.

## Factual Allegations

14.     Around March or April of 2019, Washington County Community College (WCCC) posted an opening for a full-time Science Instructor.

15.     The position description stated that the Instructor would be responsible for teaching "physical sciences and health science courses," and that the "minimum qualifications" included:

Master's degree in an education/science field; 5-10 years' experience in curriculum development, and classroom instruction, program management and leadership; experience with development and assessment of program learning outcomes; ability to provide quality classroom instruction; skilled with student evaluation; proficient with curriculum development and future program growth; a strong commitment to support program mission and curricular expansion within the department; record of successful outreach with external stakeholders.

16.    The position description stated that candidates with a bachelor's degree and 5-10 years of classroom instruction experience would be "considered" with the expectation of finishing a master's degree within three years of hire.  A true and correct copy of the position description is attached as **Exhibit A.**

17.    On or around April 15, 2019, Mr. Qudus applied for the open position by sending the required application materials to WCCC Human Resources Coordinator Robyn Leighton.  A true and correct copy of the application materials submitted by Mr. Qudus is attached as **Exhibit B.**

18.    At the time Mr. Qudus submitted his application for the position, he was 72 1/2 years old.  Mr. Qudus's age was apparent from his application because he mentioned starting high school in 1955 and because his transcripts showed that he received a master's degree in 1968.

19.    It was also apparent from Mr. Qudus's application materials that he is from Pakistan because he mentioned growing up in a "small desert town

in Pakistan" and because two of the degrees listed on his resume were from the University of Karachi, Pakistan.

20.    Although Mr. Qudus is an atheist, in his experience, many people assume because of his name and Pakistani background that he is Muslim.

21.    The application materials submitted by Mr. Qudus highlighted his extensive qualifications for the position, including his education and teaching experience.

22.    Mr. Qudus has a Bachelor of Science degree from the University of Karachi, Pakistan and two Master's degrees, one in Geology from the University of Houston, Clearlake, and one in Petroleum and Structural Geology from the University of Karachi.  He also has obtained graduate credits in education from the University of Texas, and in psychology and cyber security from the University of Maine at Augusta.

23.    Mr. Qudus has 26 years of experience teaching science classes at San Antonio College in San Antonio, Texas, including geology, environmental geology, oceanography, and field geology, and numerous courses with field research and labs.  San Antonio College is a public community college.

24.    Prior to teaching, Mr. Qudus worked as a geologist for 14 years.

25.    Mr. Qudus has lived in Washington County since 2012, and during that time he has developed many connections in the local community, as well as at the University of Maine at Augusta, at Fort Kent, and Machias

where he has continued his education.  Due to his recent experience as a student in the University of Maine System, he has a strong understanding of the resources available to non-traditional students and non-degree seeking students in the University of Maine system.

26.    Because of his tenure as a science professor at San Antonio College, Mr. Qudus has developed relationships with employers around the country interested in hiring recent science graduates, and many of his former students have gone on to pursue successful careers in the science field and may be in the position to hire recent graduates.

27.    Mr. Qudus also has connections in the energy industry from his time working as a geologist in that industry.

28.    In response to an open-ended request by WCCC, Mr. Qudus submitted with his application an explanation of his "educational philosophy." Mr. Qudus described how he viewed himself as a lifelong student, beginning with his high school in a small town in Pakistan and continuing with the classes he was taking at the University of Maine at Augusta in 2019. He related how viewing himself as a student had influenced his teaching philosophy, including that "teaching and learning are not two separate functions," and that he is always learning and growing by teaching his students.

29.    Mr. Qudus also explained that he had been inspired by and sought to emulate his most memorable teachers, who always made learning exciting, rather than a chore, and that he believes that a teacher's job is to nurture students, build their confidence, and not leave any student behind because "the success of my students was my success."

30.    Along with his application, Mr. Qudus submitted three positive letters of recommendation from his colleagues at San Antonio College, including one that described him as "very passionate about his students" and a "strong advocate for students," and that "he always valued input and feedback from junior and senior faculty alike, treating everyone with great professionalism."

31.    After the application period for the science instructor position closed, WCCC concluded that Mr. Qudus had met the minimum qualifications for the position.

32.    WCCC selected a hiring committee to review applications, including Mr. Qudus's, and score them on four criteria: Health and Safety/Science Lab Experience"; "Education and Teaching Experience"; "Teaching Philosophy"; and "Engaging Stakeholders."  Applicants were scored on a 1-4 scale, with 4 being the best and 1 being the worst.

33.    After the scores were tallied, Mr. Qudus ended up in fifth place with a score of 48, four points behind the fourth-place candidate, who had a

score of 52.  WCCC decided to advance the top four candidates to the interview round, so Mr. Qudus was not selected for an interview and was notified that he had not been selected for the position.

34.     Despite Mr. Qudus's long teaching career and work experience and his current connections as a student at the University of Maine at Augusta, Elizabeth Sullivan, the Chair of the Liberal Studies Department, gave Mr. Qudus a "1" on the "engaging stakeholders" metric, explaining later that she was looking for "evidence of working with community partners who are connected to relevant careers, schools and programs, and importing and exporting relevant information to and from those types of groups."  She "saw no evidence in Mr. Qudus's materials that as an instructor he had any experience working with community partners."

35.     Ms. Sullivan ranked all applicants above Mr. Qudus on the "engaging stakeholders" metric and gave most other applicants 3s or 4s, despite other applicants also not specifically mentioning work with community partners.  For example, Ms. Sullivan gave Stephanie Allard, the applicants ultimately selected, a "4" on this metric, despite Ms. Allard's application containing no more description of working with "community partners" than Mr. Qudus's.

36.     Ms. Sullivan also gave Mr. Qudus a "2" on "safety/science lab experience" because Mr. Qudus did not specifically mention that the college-

level science courses he taught involved labs. She viewed his application materials as showing a "lack of evidence of working or teaching in a lab environment."

37.    In fact, Mr. Qudus's resume highlighted how he had taught field courses such as field geology that involved teaching students how to conduct scientific research in a field or lab setting. Additionally, as another reviewer pointed out, it was completely reasonable to infer that at least some, if not all, of the college-level science courses taught by Mr. Qudus over his career would include a lab component. It was also reasonable to infer that, having obtained two master's degrees and worked as a geologist for 14 years, Mr. Qudus would have experience working in a lab.

38.    Ms. Sullivan scored most other applicants higher on the lab experience metric, despite their application materials containing no more reference to teaching labs than Mr. Qudus's. For example, while Ms. Allard's application showed that she had done some field research and taught at least one course with "field" in the name, it did not mention any experience working or teaching in a lab. Nonetheless, Ms. Sullivan gave Ms. Allard a "4."

39.    After the interview round, the President of WCCC, Susan Mingo, interviewed the top two candidates and decided to offer Ms. Allard the job.

40.    Ms. Allard is 54 and therefore significantly younger than Mr. Qudus. She is white and from the United States.

41.     When she submitted her application, Ms. Allard had only a Bachelor of Science degree, but she was enrolled in an online Master's degree program in Biology at the University of Nebraska with an expected graduation date of August 2021.

42.     Ms. Allard's sole college-level teaching experience was as an adjunct science instructor at WCCC from 2002-2013. She also had experience teaching high school science.

43.     During the MHRC process, WCCC gave a new rationale for deciding not to select Mr. Qudus for an interview: that his application did not show he had the education or teaching background to teach the courses taught by the Science Instructor.  WCCC specifically stated in its response to the MHRC that "the College was not seeking a science instructor with Mr. Qudus's subject matter expertise" and that was why he was not selected for the position.

44.     In fact, there is no indication that Mr. Qudus's lack of experience teaching the subjects taught by the Science Instructor played a role in the decision not to hire him. He received high scores from all reviewers in the "education and teaching experience category," and he did not receive a score lower than a 3 in that category.

45.     Several of the statements submitted by reviewers as part of the MHRC process stated that Mr. Qudus's lack of experience teaching the

subject matter taught by the science instructor did not stop them from giving him the highest score of 4 in the "education and teaching experience" category.

46.     Another after-the-fact justification offered by WCCC for not hiring Mr. Qudus was that, unlike Mr. Qudus, Ms. Allard had "a personal experience that is very similar to the type of students served by WCCC," and that she was "very familiar with the student population served by WCCC."

47.     Mr. Qudus has personal experiences similar to the students served by WCCC because he grew up in a rural area like Washington County and has experience attending college as a non-traditional student.

48.     Mr. Qudus has more than 26 years of experience teaching at a public community college, so he is very familiar with teaching a student population like the one served by WCCC. Mr. Qudus also lives in Washington County and, as a result, is familiar with the community where WCCC is based.

49.     Every single full-time instructor at WCCC is white and, as described by WCCC, "American." No full-time instructor at WCCC is older than Mr. Qudus.

## Legal Claims

### Count I
### Unlawful Discrimination Based on Age, Religion, Race, Ancestry, Color, and National Origin

50.     The allegations in paragraphs 1-49 are realleged.

51.     WCCC intentionally discriminated against Mr. Qudus because of his age, religion, race, ancestry, color, and national origin, in violation of 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and the Maine Human Rights Act, 5 M.R.S. §§ 4551-4634.

52.     Mr. Qudus is pursuing all possible methods of proving this discrimination, including but not limited to, circumstantial and direct evidence, pretext evidence, as well as causation based on a single unlawful motive and mixed motives, including an unlawful motive.

53.     As a direct and proximate result of WCCC's intentional discrimination, Mr. Qudus has suffered and will continue to suffer damages, including, but not limited to, back pay and benefits, emotional pain and distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to reputation, and other pecuniary and non-pecuniary losses.

**Wherefore,** Mr. Qudus requests relief against Defendant as follows:

(a) Declare that Defendant violated Mr. Qudus's statutory civil rights to be free from age, religion, race, ancestry, color, and national origin discrimination.

(b) Enter injunctive relief ordering Defendant to:

- Provide effective civil rights training for all Human Resource employees and employees involved in the hiring process on the requirements of all applicable laws prohibiting employment discrimination because of age, religion, race, ancestry, color, and national origin, and complete this training within 60 days of the entry of Judgment for Injunctive Relief;

- Provide this training for two years after the date judgment is entered to all new Human Resources employees within 60 days of their starting the position or and to all employees involved in hiring decisions before they can make any decisions related to hiring;

- Maintain attendance sheets identifying each person who attended each training session and forward a copy of the attendance sheets to Plaintiff's counsel within seven days of each training session;

- Post in a public location on its campus a copy of a remedial notice detailing the judgment in this case as well as the order providing injunctive relief;

- Send a letter printed on Defendant WCCC's letterhead and signed by the Defendant's President to all of WCCC's employees advising them of the judgment in this case, enclosing a copy of its policies prohibiting age, religion, race, color, ancestry, and national origin and retaliation, and stating that they will not tolerate any such discrimination, and will take appropriate disciplinary action against any employee or agent of Defendant who engages in such discrimination;

(c) Award Mr. Qudus back pay for lost wages and benefits and prejudgment interest thereon and instatement to a full-time Science Instructor position, or in lieu thereof, front pay for future lost wages and benefits;

(d) Award Mr. Qudus damages in an amount equal to his back pay on Mr. Qudus's claims under the ADEA only;

(e) Award compensatory damages in amounts to be determined at trial by the jury on Mr. Qudus's claims under 42 U.S.C. §1981,

Title VII, and the MHRA. Mr. Qudus is not seeking compensatory damages on his ADEA claims;

(f) Award punitive damages in amounts to be determined at trial by the jury on Mr. Qudus's claims under 42 U.S.C. § 1981, Title VII, and the MHRA. Mr. Qudus is not seeking punitive damages on his ADEA claims;

(g) Award Mr. Qudus full expenses and reasonable attorney's fees;

(h) Award Mr. Qudus prejudgment interest; and

(i) Award such further relief as is deemed appropriate.

Respectfully submitted,

Date: December 14, 2020

Abdul Qudus

Abdul Qudus

744 US Route 1,
Robbinston,
Maine 04671
(207) 454 1105
<toqudus@earthlink.net>