UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **ERIJ QUDUS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) 1:20-cv-00465-JDL |
| | ) |
| **WASHINGTON COUNTY** | ) |
| **COMMUNITY COLLEGE,** | ) |
| | ) |
| **Defendant.** | ) |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff Erij Qudus, proceeding pro se, alleges that Washington County Community College (the "College") discriminated against him based on his age, religion, race, ancestry, color, and national origin during the 2019 hiring process for a Science Instructor position at the College (ECF No. 1), in violation of 42 U.S.C.A. § 1981 (West 2022); Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e to e-17 (West 2022); the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.A. §§ 621-634 (West 2022); and the Maine Human Rights Act ("MHRA"), 5 M.R.S.A. §§ 4551-4634 (West 2022).

The College has moved for summary judgment (ECF No. 41), arguing that Qudus cannot establish that the College's stated non-discriminatory reasons for not interviewing and hiring him were pretextual. Qudus responded in opposition (ECF No. 44) and also filed an additional memorandum entitled Counter Motion Plaintiff's Opposition to the Defendant's Motion for Summary Judgment (ECF No. 49). Qudus has not moved for summary judgment in his favor and instead disputes the College's arguments. For the reasons detailed below, I grant the College's motion.

1

## I.  FACTUAL BACKGROUND

The following facts are drawn from the parties' separate statements of fact. *See* ECF Nos. 42 (the College), 44 (Qudus).[1]

**A.      The Science Instructor Position and Hiring Process**

The College is a community college located in Calais, Maine.  The College maintains policies that prohibit consideration of an applicant's race, color, religion, national origin, sex, sexual orientation, age, genetic information, disability, marital, parental, or Vietnam-era status.  Approximately 35% of the College's 22 full-time faculty and 15 active adjunct staff are age 60 or older.  The College had an opening for a Science Instructor in April 2019 and created and posted a job description including information about the position, minimum qualifications required, and instructions to apply.  The Science Instructor would serve as the sole full-time science instructor for the College, responsible for the core science courses required for the College's health sciences programs.  The job description indicated that the minimum educational experience required was a master's degree in an education or science field, or bachelor's degree in a science field with an expectation of obtaining a master's degree within five years.  Additionally, the position required 5-10 years of experience

---

[1] Qudus's filings do not comply with District of Maine Local Rule 56, as his responsive memorandum far exceed the allotted page limits and his response to the Defendant's Statement of Material Facts does not admit, deny, or qualify each fact but instead responds with arguments that are largely unsupported by record citations.  Pro se parties, as a rule, are not excused from complying with Local Rule 56, which provides the required procedure for establishing the factual record in connection with a motion for summary judgment.  *See Ruiz Rivera v. Riley*, 209 F.3d 24, 28 & n.2 (1st Cir. 2000) (noting that the First Circuit has "held consistently that pro se status does not free a litigant in a civil case of the obligation to comply with" a district court's procedural rules).  However, in some cases, the Court has granted some leniency to pro se parties during summary judgment disputes.  *See, e.g.*, *Clarke v. Blais*, 473 F. Supp. 2d 124, 128-30 (D. Me. 2007); *Demmons v. Tritch*, 484 F. Supp. 2d 177, 183-84 (D. Me. 2007); *Tinkham v. Perry*, No. 1:12-cv-229, 2015 WL 2092513, at *2 (D. Me. May 5, 2015).

in curricula development, classroom instruction, and program management. Applicants were instructed to submit a cover letter, resume, statement of educational philosophy, unofficial transcripts, and list of three professional references for consideration. The College assembled a search committee to review the applications, comprised of the College's Dean of Academic Affairs, the Chair of the Liberal Studies Department, the Transfer Counselor and Learning Specialist, and the Director of Human Resources. The search committee met to review the applications, and identified seven candidates, including Qudus, who possessed the minimum qualifications for the role.

During its second meeting, the search committee identified four criteria to use to judge the qualified applicants, which were drawn from the job description: (1) health and safety/science lab experience and safety; (2) education and experience; (3) educational philosophy; and (4) engagement with stakeholders. The committee's members separately ranked each qualified applicant based on these criteria, totaled the scores of the candidates, and then selected the four candidates with the highest totals for interviews. Qudus was not selected for an interview. Each of the four candidates who were interviewed possessed a bachelor's or higher degree in a natural sciences discipline, and each possessed experience teaching at the high school or college level. The applicant ultimately hired for the position possessed a bachelor's degree and was in the process of obtaining a master's degree; had 10 years' experience teaching biology, anatomy and physiology, and chemistry at the high school level; prior experience teaching courses at the College as an adjunct professor; and a record of success in obtaining grants from local entities for her student work.

### B. The Defendant

Qudus grew up in Pakistan and identifies as an atheist, although he has been frequently mistaken to be Muslim. At the time he applied for the Science Instructor position, he was over 72 years old. He holds a Bachelor of Science degree in Geology, Master of Science degree in Petroleum and Structural Geology, and Master of Science degree in Geology. Qudus worked for approximately 15 years in the oil industry and taught geology courses for 26 years at San Antonio College in Texas. According to the resume he submitted with his application, Qudus never taught lab courses, nor did he teach biology, anatomy and physiology, or chemistry, although he incorporated these subjects into the geology courses he taught. Qudus assumed that the College would understand that laboratory work was an essential component of his work teaching geology courses. Qudus's statement of his educational philosophy submitted with his application described his own education and provided a general statement that his goal as a teacher is to build confidence in his students and help them build their potential.

## II. LEGAL ANALYSIS

### A. Standard of Review

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 92-93 (1st Cir. 2021). A court views the evidence in the light most favorable to the non-moving party when determining whether summary judgment should be granted. *Taite*, 999 F.3d at 92. "An issue is 'genuine' if it can 'be resolved

4

in favor of either party,' and a fact is 'material' if it 'has the potential of affecting the outcome of the case.'" *Feliciano-Muñoz v. Rebarber-Ocasio*, 970 F.3d 53, 62 (1st Cir. 2020) (quoting *Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 215 (1st Cir. 2016)). To prevail, the moving party must "affirmatively produce evidence that negates an essential element of the non-moving party's claim," or, "using 'evidentiary materials already on file demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" *Ocasio-Hernández v. Fortuño-Burset*, 777 F.3d 1, 4-5 (1st Cir. 2015) (alteration omitted) (quoting *Carmona v. Toledo*, 215 F.3d 124, 132 (1st Cir. 2000)).  A plaintiff opposing summary judgment "bears 'the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe.'" *Miceli v. JetBlue Airways Corp.*, 914 F.3d 73, 81 (1st Cir. 2019) (quoting *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003)). In doing so, "[t]he nonmovant must point to materials of evidentiary quality," *Irobe v. U.S. Dep't of Agric.*, 890 F.3d 371, 377 (1st Cir. 2018), and cannot rely on "mere allegation or denials" to sustain their burden, *Thomas v. Harrington*, 909 F.3d 483, 490 (1st Cir. 2018) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986)).

**B.     Analysis**

The ADEA prohibits employers from refusing to hire an individual on the basis of age.  29 U.S.C.A. § 623(a)(1) (West 2022).  Under Title VII, it is unlawful for an employer to "refuse to hire . . . any individual . . . because of such individual's race, color, religion, sex, or national origin."  42 U.S.C.A. § 2000e-2(a)(1) (West 2022).

5

Discrimination in hiring based on race is also unlawful under 42 U.S.C.A. § 1981.[2] The *McDonnell Douglas* burden-shifting framework applies to claims made under each of these acts. *See Caraballo-Caraballo v. Corr. Admin.*, 892 F.3d 53, 57 (1st Cir. 2018) ("Disparate treatment claims under Title VII are ordinarily subject to the familiar *McDonnell Douglas* burden-shifting framework."); *Vélez v. Thermo King de P.R., Inc.*, 585 F.3d 441, 446-47 (1st Cir. 2009) ("ADEA plaintiffs . . . may . . . prove their cases by using the three stage burden-shifting framework set forth by the Supreme Court in [*McDonnell Douglas*]."); *Pina v. Child.'s Place*, 740 F.3d 785, 796 (1st Cir. 2014) ("Where . . . there is no direct evidence of discrimination, a plaintiff seeking to establish a prima facie case of race discrimination under § 1981 must successfully navigate the familiar *McDonnell Douglas* burden shifting framework.").

Under the three-step *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of discrimination, which, if met, "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Soto-Feliciano v. Villa Cofresí Hotels, Inc.*, 779 F.3d 19, 23 (1st Cir. 2015) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)). The burden at this first stage on the plaintiff is "modest." *Id.* (quoting *Rathbun v. Autozone, Inc.*, 361 F.3d 62, 71 (1st Cir. 2004). If the plaintiff satisfies that burden, then, at the second stage, the defendant must "articulate a legitimate nondiscriminatory reason in response." *Zapata-Matos v. Reckitt & Colman, Inc.*, 277 F.3d 40, 44 (1st Cir. 2002). The burden

---

[2] The MHRA similarly prohibits discrimination in employment on the basis of membership in certain protected classes, 5 M.R.S.A. § 4571 (West 2022), and is applied by Maine courts in accordance with federal anti-discrimination law, *Forrest v. Brinker Int'l Payroll Co.*, 511 F.3d 225, 228 n.1 (1st Cir. 2007).

then shifts back to the plaintiff at the third stage to "produce evidence that [the employer's] proffered reasons are a pretext for age discrimination." *Arroyo-Audifred v. Verizon Wireless, Inc.*, 527 F.3d 215, 219 (1st Cir. 2008).

**1. Prima Facie Case**

A plaintiff establishes a prima facie case of discrimination by demonstrating "that the plaintiff belongs to a protected class and qualified for the position, but that the employer chose an equally or less qualified applicant." *Brandt v. Fitzpatrick*, 957 F.3d 67, 76 (1st Cir. 2020). The College concedes, for the purpose of its motion for summary judgment, that Qudus is able to make out a prima facie case on his age, race, ancestry, color, and national origin claims. The College contends that Qudus does not make out a prima facie case with respect to his religious discrimination claim because he bases this claim on discrimination against Muslims, but he himself is not Muslim and thus is not a member of the protected class. Qudus acknowledges that he is not Muslim but contends that he experienced discrimination because he was perceived to be Muslim. *See Kallabat v. Mich. Bell Tel. Co.*, Case Nos. 12-CV-15470, 2015 WL 5358093, at * 4 (E.D. Mich. June 18, 2015) (allowing a plaintiff's Title VII claim based on alleged discrimination because of his employer's perception of his religion to proceed); *Afshar v. Pinkerton Acad.*, No. Civ. 03-137, 2004 WL 1969873, at * 3 n.2, 5 (D.N.H. Sept. 7, 2004) (denying summary judgment to the defendant on a claim of discrimination based on national origin and perceived religion). I find this sufficient to establish a prima facie case of discrimination based on religion, contrary to the College's argument. Thus, for the purpose of summary judgment, Qudus has

established a prima facie case of discrimination based on age, religion, race, ancestry, color, and national origin.

### 2. Legitimate, Non-Discriminatory Reason for the Decision Not to Interview or Hire the Defendant

The College argues that it legitimately decided not to interview or hire Qudus for the position because he was less qualified than the applicants who were selected for interviews. Although Qudus met the minimum requirements for the position, his application was ranked lower than the four candidates who were selected for interviews. Specifically, Qudus received lower rankings in the areas of: (1) education and teaching experience, because his materials indicated that he did not have education or experience teaching biology, chemistry, or anatomy and physiology—core subjects taught by the Science Instructor; (2) his resume did not indicate that he had experience working or teaching in a lab; (3) unlike other applicants, his teaching philosophy did not describe his approach to teaching; and (4) his application materials did not show connections with community stakeholders beyond prior work with oil companies. Because the College has offered a legitimate, non-discriminatory reason for not interviewing Qudus, I "move to the third and final stage of the inquiry"—whether this reason is pretextual. *Soto-Feliciano*, 779 F.3d at 23.

### 3. Pretext

At the final stage of the *McDonnell Douglas* framework, Qudus must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Vélez,* 585 F.3d at 447-48 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

8

This requires that the plaintiff "elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real and unlawful motive of discrimination." *Paul v. Murphy*, 948 F.3d 42, 49 (1st Cir. 2020) (quoting *Ray v. Ropes & Gray LLP*, 799 F.3d 99, 113 (1st Cir. 2015)). To that end, Qudus must produce evidence to "create a genuine issue of fact as to two points: 1) the employer's articulated reasons for its adverse actions were pretextual, and 2) the real reason for the employer's actions was discriminatory animus." *Id*. at 50 (quoting *Ray*, 799 F.3d at 113). At the summary judgment stage, the plaintiff's required showing is that "his ability to meet that burden turns on a genuine issue of material fact." *Soto-Feliciano*, 779 F.3d at 23.

Pretext may be shown through evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Theidon v. Harvard Univ.*, 948 F.3d 477, 497 (1st Cir. 2020) (quoting *Adamson v. Walgreens Co.*, 750 F.3d 73, 79 (1st Cir. 2014)). "[E]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Id*. at 496 (quoting *Coll v. PB Diagnostic Sys., Inc.*, 50 F.3d 1115, 1121 (1st Cir. 1995)). "[C]onjecture cannot take the place of proof in the summary judgment calculus." *Bennett v. Saint-Gobain Corp.*, 507 F.3d 23, 31 (1st Cir. 2007).

Qudus's memoranda of law do not identify any genuine issues of disputed material fact. Instead, Qudus contends that, although his application materials did not explicitly confirm that he possessed the qualifications prioritized by the search committee, the committee should have inferred that he had those qualifications and that the committee improperly weighed the factors that went into their hiring decision. Although Qudus contends that the College's purported reasons must be pretextual because Qudus believes that he was more qualified for the position than the candidate who was ultimately hired, his "personal opinion regarding his own job qualifications is not sufficiently probative on the issue of pretext." *Shorette v. Rite Aid of Maine, Inc.*, 155 F.3d 8, 15 (1st Cir. 1998). Because Qudus's arguments rely on pure conjecture, he has failed to demonstrate a genuine issue of material fact as to whether the College's stated reasons for choosing not to interview him for the position were pretextual. Thus, Qudus's claims of discrimination based on age, religion, race, ancestry, color, and national origin fail as a matter of law. Accordingly, the College is entitled to summary judgment.

### III.  CONCLUSION

It is **ORDERED** that Washington Community College's Motion for Summary Judgment (ECF No. 41) is **GRANTED**.

**SO ORDERED.**

**Dated: March 31, 2022.**

                                                                    /s/ JON D. LEVY
                                               **CHIEF U.S. DISTRICT JUDGE**